UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

ARTHUR LEWIS,

          Plaintiff,

    -v-

EDWIN HEIDELBERGER, M.D.,
JANET COLLESANO, NP,
LORETTA TRASK, PA,
JOSH GREGORIO, DIET SUPERVISOR,
COUNTY OF ERIE, NEW YORK,

          Defendants.

13-CV-261S
ORDER



___

## INTRODUCTION

Plaintiff Arthur Lewis, who was detained at the Erie County Correctional Facility at the time he commenced this *pro se* action has filed a complaint (Docket No. 1), a motion to proceed *in forma pauperis* (Docket No. 2), and a motion for the appointment of counsel (Docket No. 3). Plaintiff's application to proceed as a poor person will be granted and, for the reasons set forth below, several of his claims will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## BACKGROUND

Plaintiff's allegations set forth in his complaint are in effect supplemented by a typed statement attached to his request for counsel (Docket No. 3, p. 2), and given the Court's duty to interpret liberally the pleadings of *pro se* litigants, the Court will deem page 2 of his request for counsel as a Supplement to the complaint, and direct the Clerk of the Court to

file it as such. The Court's summary of plaintiff's claims consequently will draw upon both the allegations of the complaint and those set forth in the Supplement to the complaint.

Plaintiff allegations relate to his medical treatment during his sojourns at the Erie County Holding Center ("Holding Center") and the Erie County Correctional Facility ("Correctional Facility") in September, 2012. He alleges that at the time of his arrest on September 26, 2012, he had a fractured left foot and was wearing a "boot," apparently a therapeutic boot. He states that he was made to remove the boot, and instead given a pair of sneakers. Though he informed holding center officials of his injury and the need for the boot to be restored, and complained "constantly of the pain and swelling," his request was ignored. He alleges, in this regard, in the First Claim of the complaint, that defendant Dr. Heidelberger, Facility Medical Director at the Holding Center, allowed him to go without the boot for three months. An x-ray finally taken in December, 2012 revealed that the fracture had healed improperly. He further states, in the First Claim, that defendant Janet Collesano, a Nurse Practitioner at the Holding Center, "had me on medication and in my next hospital visit I was placed in I.C.U. for being wrongfully medicated." He does not give any specifics in this regard, but the Supplement to the complaint states that his admission to ECMC in December was due to his having been "over-medicated" at the Holding Center, bringing his heart rate down to 30 (presumably thirty beats per minute). Following the x-ray, plaintiff was sent to the Erie County Correctional Facility ("ECMC"), where a blood clot was found in the same leg.

After treatment at ECMC, plaintiff alleges that he was returned to the Holding Center with medical instructions concerning his heart and blood pressure conditions, a low sodium diet and medication changes to treat the blood clot (the blood thinners Coumadin and

2

Lovenox). Plaintiff was transferred from the Holding Center to the Correctional Facility a few days later; he alleges in the Second Claim of the complaint that Dr. Heidelberger allowed him to be transferred without a "follow-up plan." He alleges that Correctional Facility personnel were unable to properly treat his medical issues, and claims that the nurses at the facility, unable to draw his blood, sent him back to ECMC every few days to have it drawn. After this had been done a few times, defendant Loretta Trask (a physician's assistant at the Correctional Facility) discontinued plaintiff's blood thinning medication, allegedly because it was inconvenient to have to take him back to the hospital every few days. Plaintiff claims that this decision was made without any examination to determine the condition of the blood clot, and that he subsequently developed a lump on his left leg. After an ultrasound at ECMC, the lump was determined to be a hematoma which was treated dismissively by ECMC staff.

Plaintiff's only allegation in the complaint (Second Claim) with respect to defendant Correctional Facility Diet Supervisor Josh Gregorio is that defendant refused to provide a low sodium diet.

## STANDARD OF REVIEW

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*. Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. In addition, 28 U.S.C. § 1915A(a) requires the Court to conduct an initial screening of "a

complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.*, regardless of whether or not the inmate has sought *in forma pauperis* status under 28 U.S.C. § 1915.

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (*per curiam*); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Moreover, "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004); *see also Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S.89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir 2008) (discussing pleading standard in *pro se* cases after *Twombly*; "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." ). "A document filed *pro se* is to be liberally construed ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94 (internal quotation marks and citations omitted). Generally, the Court will afford a *pro se* plaintiff an

opportunity to amend or to be heard prior to dismissal " 'unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.' " *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam* )).

## DISCUSSION

Deliberate Indifference Claims Against Individual Defendants

A claim for inadequate medical treatment may give rise to a constitutional deprivation where a prisoner alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (establishing the standard applicable to treatment of convicted prisoners under the Eighth Amendment); *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996) (applying the same standard to pretrial detainees under the Fourteenth Amendment). In order to meet this standard, a plaintiff must show that he was "actually deprived of adequate medical care," and that "the inadequacy in medical care [was] sufficiently serious." *Salahuddin v. Goord,* 467 F.3d 263, 279-80 (2d Cir. 2006).

This standard has both an objective and subjective component. Plaintiff's medical needs must be objectively serious. "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " *Harrison v. Barkley,* 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)). In *Harrison,* the Second Circuit pointed out that

5

> [medical] conditions ... vary in severity and ... a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case. Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment."

*Id.* (quoting *Chance*, 143 F.3d at 702).

For his claim to survive this initial review, plaintiff must also address the subjective component – that the prison officials were deliberately indifferent to this need. Plaintiff must adequately allege that the prison official had actual knowledge of plaintiff's serious medical needs, but was deliberately indifferent. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1978-79, 128 L. Ed.2d 811 (1994); *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.2d 178, 184 (2d Cir. 2003). Because prison officials have broad discretion in determining the type and extent of medical treatment given to inmates, mere disagreement over the proper treatment does not create a constitutional claim. *Thomas v. Pate*, 493 F.2d 151, 157 (7th Cir. 1974), *cert. denied*, 423 U.S. 877, 96 S. Ct. 149, 46 L. Ed.2d 110 (1975). Thus, a court cannot impose the same standards of medical care upon a prison as it would expect from a hospital. *See, e.g., Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (a "correctional facility is not a health spa, but a prison in which convicted felons are incarcerated;" so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation); *Ruiz v. Estelle*, 679 F.2d 1115, 1149 (5th Cir.) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves"),

*vacated in part as moot*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042, 103 S. Ct. 1438, 75 L. Ed.2d 795 (1983). An isolated failure to provide medical treatment, without more, is generally not actionable unless "the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment." *Gil v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Furthermore, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim. *See Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 291-92. At the same time, however, "while 'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway*, 99 F.3d at 553 (citation omitted). Thus, in certain instances a physician may be deliberately indifferent if he or she consciously chooses "an easier and less efficacious" treatment plan. *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) (holding that where plaintiff alleged that the prison doctors chose simply to close a wound caused by the severing of his ear rather than attempting to reattach the organ, such treatment could constitute deliberate indifference rather than a mere difference of opinion over a matter of medical judgment); *see also Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (reaffirming position that "choice of an easier but less efficacious course of treatment can constitute deliberate indifference").

Measured against the standard used to assess claims of deliberate indifference to medical needs, as summarized above, the Court determines that plaintiff's claims against

Dr. Heidelberger may go forward. Plaintiff's claim against defendant Physician's Assistant Trask asserted in the Second Claim of the complaint may likewise proceed; although plaintiff's allegations with respect to defendant's alleged termination of his Coumadin treatments and her reason for her action appear to be essentially conclusory in nature, a *sua sponte* dismissal of a *pro se* claim is disfavored where plaintiff's allegations, assumed to be true, would suffice, even minimally, to state a claim for relief. *See, e.g., McEachin v. McGuiniss*, 357 F.3d 197, 200 (2d Cir. 2004) ("We have frequently reiterated that '[s]ua sponte dismissal of pro se prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.' ") (quoting *Moorish Sci. Temple of Am. Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)); *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer.") (citations and internal quotations omitted)).

However, plaintiff's claims against defendants Collesano and Gregorio must be dismissed for failure to state a claim. As noted above, the only reference in the complaint against Collesano is that she had plaintiff on medication during his initial stay at the Holding Center, and that he was "wrongfully" ("wrongfully" here construed as "erroneously") medicated. His statement in what the Court has now deemed to be his supplement to the complaint alleges that he was over-medicated at the Holding Center and, if considered in conjunction with the sole allegation against Collesano in the complaint, can be read as

8

implying that she was responsible for the over-medication which led to his abnormally low heart rate when he was transferred to ECMC. This hardly suffices to satisfy the subjective component of a deliberate indifference claim, which requires that the defendant have acted "with the requisite state of mind, the 'equivalent of criminal recklessness.' " *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 553, 556 (2d Cir. 1996)). The allegations against Collesano, construed as liberally as they will allow, would state at most a claim for medical malpractice which, as noted above, does not, without more, rise to the level of deliberate indifference.

As noted, the only allegation in the complaint regarding defendant Gregario is that he "refused" plaintiff's low sodium diet. The only elaboration on this claim is contained in a grievance attached to the complaint, filed by plaintiff filed while incarcerated at the Correctional Facility. In it, plaintiff merely states that on one occasion he had received a "tray full of salty potato chips and a processed burrito," contrary to the heart-healthy diet he required; apparently in response to his complaint, he was sent two oranges, which he construed as indicating that "the people in the kitchen are playing games with me." In response to his grievance he was assured that the kitchen was aware of his dietary needs and would be emailed to confirm his status. (Complaint, p. 11 (Attachment)).

While under certain circumstances, the denial of a medically required diet may constitute a constitutional violation, *see, e.g., LaBounty v. Gomez*, 1998 U.S. Dist. LEXIS 6281, at *6, *aff'd*, 175 F.3d 1008 (2d Cir. 1999), "[m]ere negligence or inadvertent failure to provide a medically necessary diet is not a constitutional violation ...." *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996). The fact that plaintiff may have been

9

served on one or even several occasions a meal inconsistent with his dietary needs does not suffice to state a deliberate indifference claim against defendant Gregario, particularly where plaintiff does not allege any health-related consequences, let alone serious consequences, resulting from such instance(s) of an improper meal. At most, plaintiff states a claim for "negligent oversight" by the defendant, which does not rise to the level of a constitutional violation. See Collado v. Sposato, 2012 U.S. Dist. LEXIS 107024, at *14 (E.D.N.Y. July 24, 2012).

Claim Against Erie County[1]

"[A] municipality [or municipal entity] can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality [or municipal entity]." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Id.; see also Connick v. Thompson, ___U.S.___, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of

---

[1] The complaint sets forth no specific allegations against Erie County, which is not listed as a defendant on the form complaint but appears to have been added to the complaint as an afterthought inasmuch as the last page of the complaint and attached papers originally filed by the plaintiff is captioned "Motion to Amend Complaint" which merely states "Plaintiff moves to add the following: 1) Erie County as a Defendant." Docket No. 1, p. 13.

10

*Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Connick*, 131 S.Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691)); *Humphries*, 131 S. Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* ... inflicts the injury." (emphasis in original) (quotations and citation omitted)). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1741, 182 L. Ed. 2d 528 (2012).

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. *See Santos v. New York City*, 847 F. Supp.2d 573, 576 (S.D.N.Y. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Id.* Since the instant complaint is entirely devoid of any factual allegations tending to support an inference that a municipal policy or custom existed that caused the medical indifference of which plaintiff complains, it fails to state a plausible Section 1983 claim against Erie County. *See, e.g., Murray v. Johnson*, 367 F. App'x 196, 197 (2d Cir. 2010) (summary order) (affirming dismissal of the plaintiff's deliberate indifference claim against the municipality where the plaintiff failed to show an official policy or directive that caused the medical staff or prison guards unreasonably to act). Accordingly, plaintiff's claims against defendant Erie County will be dismissed.

## CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby granted. For the reasons discussed above, plaintiff's claims against Janet Collesano, Josh Gregario and County of Erie are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(i), and the U.S. Marshal is directed to serve the summons and complaint on Edwin Heidelberger, M.D., and Loretta Trask, NP, regarding the medical deliberate indifference claims asserted by plaintiff against them.

Plaintiff's request for the appointment of counsel is denied without prejudice as premature.[2]

## ORDER

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the Clerk of the Court is directed to file and docket page 2 of plaintiff's motion for the appointment of counsel (Docket No. 3, p. 2) as "Supplement to Complaint;"

FURTHER, plaintiff's motion for the appointment of counsel is denied without prejudice;

FURTHER, that the claims against Janet Collesano, Josh Gregario and County of Erie are dismissed with prejudice;

---

[2] A more fully developed record will be necessary before the Court can determine whether plaintiff's chances of success warrant the appointment of counsel. Therefore, plaintiff's application for counsel is denied without prejudice to its renewal at such time as the existence of a potentially meritorious claim may be demonstrated. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (when determining whether to appoint counsel, the Court must first look to the "likelihood of merit" of the underlying dispute).

FURTHER, that the Clerk of the Court is directed to terminate defendants Janet Collesano, Josh Gregario and County of Erie as parties to this action;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, Supplement to Complaint and this Order upon Edwin Heidelberger, M.D., and Loretta Trask, NP, without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;[3]

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to respond to the complaint.

SO ORDERED.

DATED: 9/25, 2013
Buffalo, New York

_____
JOHN T. CURTIN
United States District Judge

---

[3]Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, see Fed.R.Civ.P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.